Good morning. Good morning. May it please the court, my name is Scott Davis and I am here on behalf of Richard Kludka, the appellant. This case, as the court is no doubt aware, has been going on for some time here at the Ninth Circuit. We're back again. And this case at this point, I think, provides this court with an important opportunity to restate and perhaps refine its holding regarding an administrator's duty to engage a claimant in a dialogue in an ERISA case. This court found- Counsel, I have one question that's bothering me in particular. One of the things that the district court stated in the remand decision was that the court hadn't found and you had not identified any particular evidence that you could have provided that would be additional and relevant to your client's condition and his alleged disability. So what specifically would you have provided had you been asked? And how would the administrator have known to ask for that specific information? Well, initially, Your Honor, I would point out that Mr. Kludka was unrepresented throughout the entire administrative time frame. But that's the question remains. Your complaint is, in part, they didn't ask him for more. Correct. But what is the more that was available to him? There were extensive, extensive records. Did he have more records, more doctors, something different that wasn't presented? I think that a number of things could have occurred, as I pointed out in my brief. One is they could have contacted his psychiatrist. They did initially, early on, but many, many months had passed before the final denial. There is some evidence in the record that one of the clinics or doctors tried to contact his psychiatrist and tried on something like five consecutive days and was not successful. She didn't return his calls. But, Your Honor, that was not on the final review. That was on a prior review before they terminated his benefits. But who had the obligation of contacting the psychiatrist? Well, the obligation, at least in this case. Because what our court said that was missing was that we didn't, that when Quest sent you the letter, they didn't finish out the sentence. They said, if you'd like to provide, and then it was just blank. And what they should have said was, if you'd like to, you can provide additional medical records or additional testimony. So the onus was on your client to come forward with something. So if your client wanted to, and you had the opportunity here on remand, to come forward with a statement from the psychiatrist. But that's not what the remand order said from this Court. It didn't. But it's still your obligation, it seems to me, to demonstrate that there's some prejudice from the procedural error that was identified. If the correct procedure was not followed, and it wasn't in a couple of particulars under our previous decision, then still, if everything would have come out exactly the same way, then you still can't get relief. So the question is, what specifically would have been different, and how do we know that there was prejudice? Well, what the prejudice is, is because the claim was denied, because Quest found that he did not document the claim with objective medical findings. So that would be one area. No, that's the ultimate prejudice. But what is the prejudice specific to the procedural defects that were identified? In other words, if the result would still be a denial with all the records in the world, then there's still no prejudice, as I'm defining it, even though he's still denied. So where do we go to find out whether it made any difference that he wasn't pointed to particular things to bring in? Was there something else there for him to bring in? There could have been his doctors addressing the objective medical findings issue. They could have done that in a response. But, again, they were not contacted on the final review by Quest. He could have undergone an independent medical exam. Quest could have ordered a second independent medical exam. I'll note, bring the Court's attention, that Dr. Bevin's independent medical exam, that occurred 14 months prior to the final denial, and the record is pretty clear that Mr. Klutka's medical condition deteriorated significantly after Dr. Bevin's IME. So another independent medical exam could have been done. What is the evidence that his condition deteriorated after that? One easy way to look at that, Your Honor, is Dr. Bevin's GAF score, which is a global assessment of functioning, which is an overall level of psychological functioning. Was it a 61? It was in the mild level when Dr. Bevin evaluated him. On every visit after that, in Dr. Samino's, his psychiatrist's records, the GAF score dropped down to a 50, which indicates serious, severe psychiatric problems. He was also found seriously mentally ill by the State of Arizona just several weeks before the final denial from Quest. So an independent medical exam. But all of that was not new, was it? Wasn't all that in front of the decision-maker, the Arizona decision, for example? It was, Your Honor, and my contention all along has been that that wasn't really analyzed or weighed or addressed. That's a different question than the procedural question that we're talking about. Yes. But I think it goes to the issue of who had the duty to come forward with information when Quest became aware that he was found seriously mentally ill by the State of Arizona and also when Mr. Golden, his therapist, just weeks before the final denial, said that his fear of death had intensified since his heart attack. He was sleeping 15 hours a day. He was isolating. He had severe helplessness. At that point, I think it was Quest's duty to come forward under this Court's case law and to develop the record or to assist him in developing the record. And that never occurred. So another independent medical examination at that point could have fleshed out some of the imperfections in the record. Again, his ---- But there's lots of other things that could have been done. Was Quest obligated to do that? Again, our court focused on the fact that they didn't finish that sentence. They didn't tell your client what else he needed to do in order to perfect his appeal or to reopen the case. What is it that your client would have liked to have done? Or what else was he holding at home? Or what else was there available to him that he could have done? I think part of the issue is, is he didn't realize that there was anything else that he could do because he ---- That doesn't answer the question. Of course he didn't because they didn't tell him. Right. But had they told him, what else did he have that he could have produced? Did he go to see doctors whose records they didn't have or something like that? No, they had the records. Okay. So they had all the records that had been amassed. What else could he have presented? He could have provided detailed narrative letters from his doctors dealing with the deficiencies in the record. If you're asking me specifically, did he have something to submit but he didn't submit, I'm not aware of anything that he actually had to submit in support of his case because he did a detailed letter to them three weeks earlier explaining his case to them and thought that that would be sufficient. Right. And so had they finished the sentence by saying, provide any other records or arguments that you have, I'm not sure how it would have come out differently. Well, it may have cured the defect. It may have. But what would he have given them that would have changed their mind? Well, I don't know specifically what he would have given them because I don't know that he had the ---- I don't know that psychologically he was in a condition to be able to think that through in terms of what he needed to do. But he also didn't know what the problem was with the case until he got the final denial again in terms of what the issues were and what the deficiencies were. So we're asking what it is that he could have submitted, but he really didn't know that the record was deficient. When he wrote the letter in September, weeks before the final denial, he even said, I think you didn't look at this closely enough, and I guarantee that if you look at it again with this evidence, with what I've laid out, that the claim will be approved. Well, three weeks later it was denied again. So it wasn't until after that fact that, of course, you realize, well, what ---- Well, if he didn't have any additional information, all he could do is ask them to reconsider it. Did they reconsider it? I don't know that they reconsidered it. They issued ---- But they sent him a second denial letter, right? They sent him another denial letter, right. Okay. Right. But they didn't really address or evaluate his evidence or weigh his evidence that he had submitted. That's a different question. It seems to me that you're making two separate arguments. One is that because of the procedural defects, he is entitled to something. And the other is that the decision is just wrong based on what they did have. And those are different. On the second question, the decision is just wrong, what's our standard of review? Abuse of discretion on that. My argument all along, Your Honors, has been that my view of this Court's holdings in Saloma, Safon, Montour, Boutin require the dialogue to occur when an individual has an opportunity to perfect the record so they can perfect it. And that didn't occur here. And I know you've asked me, well, what is it that he would submit? I can think of five or six or seven things that now could be submitted to perfect the record. But unfortunately, I wasn't there during the administrative review. So what I'm simply asking is that this Court, if it isn't going to outright reverse and find that he's disabled, then it seems to me that the case should be remanded back so that he can be put in the position that he should have been had the procedural defects not occurred. Well, in a funny way, what you're saying is that he had the right to counsel because what you're saying is that an experienced lawyer would know that there were many other things that could be done and should be done. But is that really a requirement? Let's say in some other case where there's no procedural defect, a person puts on pro se the best information they have and they're denied, and a lawyer takes a look and says, wow, well, you should have also done the following five things and it would have really strengthened your case. But do we engage in that sort of retrospective look or do we look at what the administrator had in hand at the time to determine whether there's an abuse of discretion? Well, my review of the cases that I just mentioned here from this Court, I think they do look at it retrospectively and look back and say what was the alleged deficiencies, what was missing from the record, and if there wasn't an opportunity to submit it at the time, then they remand it back for development of the record. I mean, that's exactly what occurred in the Safon case. There was a missing functional, it wasn't missing, it was a new reason for a denial that there wasn't a functional capacity evaluation done. And so this Court remanded it back so that if the claimant wanted to submit a functional capacity evaluation on remand, they were allowed to do that. This isn't a change of theory case, though, is it? No, they didn't, no, and they didn't tack on a new reason. But I do think that the basis of this Court's holdings over the years on a duty to engage in a dialogue, I think if a procedural irregularity has occurred, a person, a claimant, has to have the ability at some point to be put in a position that they would have been in had it not occurred. And my argument, of course, is that had they told him and informed him what it is that he could have done, which never happened in any of the denials, then at least he would have been on notice and would have known what he could do. Are you, I guess, are you arguing what, to what extent are you arguing the same thing that you argued before when this came up to an appeal before? The, some of the argument is the same as it relates to dialogue. Yeah. I don't know that that's necessarily changed, you know, other than this Court found that that procedural irregularity occurred in terms of the failure to engage in a dialogue. So I don't know that my argument is necessarily different. Well, then I'm wondering what the district court did wrong on remand. Well, the district court held that Quest didn't abuse their discretion because even though they didn't clearly tell him what he needed to submit, even though they didn't share the doctor's reports with him, that that didn't lead him to believe that a firm mistake had been committed. And, again, that, I don't believe that's consistent with this Court's holdings in terms of that, again, in the Safon case and the Booten case, these cases were remanded back. And so that the claim could be developed. I'll save the remaining time. We'll give you a little bit extra because we asked quite a few questions. We'll hear from Ms. DeWalt. Good morning. May it please the Court. I'm Karen DeWalt, representing the Quest Disability Plan. I'd like to start by addressing the issue of what additional information could have been supplied. What should the rest of that sentence, as you get started, what should the rest of that sentence have said? Actually, Your Honor, the rest of the sentence is included in a different portion of the letter. And the letter I'm referring to is the final denial on February 7th, 2007. And at page 370 in the record, it does say that a claimant can or must supply objective findings, diagnoses, and any other information relevant to the nature and duration of the disability, as well as a plan for treatment or management of the problem. So the letter, I'm sorry, that's the letter dated which? That's the letter dated February 5th, 2007. That's not the final denial, though, is it? Your Honor, that is the final denial of the claim, and then the appeal determination which was in October. Okay. So I've got the fifth, and I'm looking, and I see that we still have something missing here. Additional documentation could include there's a colon and there's nothing that follows it. And that is unfortunate, and I think that's the basis for it. And where do you think that's cured here? I think it's cured in the section that talks about what objective medical documentation is, and it lists the types of documents that the claimant can provide, and that's at page 370. Had Quest done this appropriately, what would the rest of that sentence have said? I think it would have said exactly what it says on page 370, which is additional findings, medical records, diagnoses, your treatment plan, medical records. And I think when we talk about the procedural irregularity here, talking about it in terms of a deficient record I don't think is quite accurate, because as the Court has pointed out, there were voluminous medical records in this file. The letter could have been more artfully drafted in stating that objective medical documentation didn't support disability. I don't believe what the plan administrator was saying is that there's anything missing. I believe what they were saying is that the objective medical documentation that was supplied doesn't prove disability because it demonstrates that the claimant can engage in all of his activities of daily living. There were tests that were supplied that showed that he had adequate he performed adequately on tests of concentration, showed that he was given the MMPI, and it showed that it was possibly an invalid profile that indicated an exaggeration of symptoms, showed that he was able to take care of his grandchildren and drive and go grocery shopping and exercise and read and do all kinds of things that the administrator listed in the letter as being inconsistent with disability. So to the point of, you know, what is missing from this record, I think that's the critical question here. Well, I think part of the appellant's argument is that things that were already in existence were not missing, but that he didn't understand that he had the opportunity to develop additional things that weren't yet in existence, like more recent or follow-up items or a request for a second IME or something like that. Yeah. The IME was conducted in August of 2006, and that was about five months before the denial of the claim. And then six months elapsed between that denial and claimant's appeal. He didn't appeal for quite some time. So part of that delay, I think, is not the administrator's doing. But I also don't believe that the plan requires that an additional IME be done on appeal. In order to what the plan and what ERISA requires at the appeal level is that the claimant be given a full and fair review of the denial. And the denial was based, the denial in February was based on the IME, which at that point was pretty recent. During the appeal, the administrator sent the file to two additional reviewers to review that file, which was part of the full and fair review. Also during that appeal period, Mr. Kludka submitted his detailed four-page letter, which I submit demonstrates that he did know what type of evidence the plan administrator was interested in seeing because he recounted his medical history in fairly precise detail. And he submitted many other documents. Now, at this point to say if the administrator had written a more clear letter that precisely told me that it was the fact that I could engage in all of my activities of daily living, that I didn't perform well on these tests, and that I presented with normal affect and speech and behavior and dress, I might have had my doctor write a letter that more precisely addressed the concerns the administrator had, I don't think that's what's required. And it doesn't demonstrate that there was an abuse of discretion. It just demonstrates that the claimant might have asked his doctors to write their findings in a different manner. I think it's telling that one of the issues before this court on appeal is the issue of the extrinsic evidence. And during the six years of litigation in this case, Mr. Kludka did supply or did offer voluminous extrinsic evidence which he would like the Court to consider. But none of that goes to the issue of whether or not the record was deficient. During that period of time when we're in litigation, if there was extrinsic evidence that should have been submitted before the claims administrator to make the record more complete, under a body, Mr. Kludka could have submitted that. And during that time frame, Mr. Kludka was represented by counsel, and there hasn't been one piece of evidence that has been offered during the six years that this case has been in litigation. And I think that demonstrates that even though there was a procedural error that resulted from the inartful drafting of the letter and the mistake in not including the types of documents that Mr. Kludka could have presented, there is no prejudice. There's nothing else out there that would have been submitted. And that was the reason that we remanded in the first place, I take it was. The reason that it was remanded in the first place was to determine whether or not a factual error would tip the balance toward an abuse of discretion. So, and I'm glad you raised that point, because the procedural errors that we're talking about here were addressed by the first panel. And significantly, that panel did not find that those errors, either alone or in combination, resulted in an abuse of discretion. It was remanded so that the district court could consider whether a factual error which had to do with his reinstatability or Yeah, there was a factual conclusion that was an error that Quest had offered to reinstate Mr. Kludka to his job. That error didn't even come up until the case was in litigation. Nobody who was involved in the claims handling practice or Mr. Kludka labored under the misconception that he was going to get his job back. That was an error that came up in litigation. So the district court found that that error did not tip the balance toward an abuse of discretion because the plan does not require that Quest offer a job back or that the plan administrator assist in finding a job. And the social security determination was taken care of by the district court? That was, Your Honor, the district court found that that was not an abuse of discretion for a couple of reasons. One is that although it was Mr. Kludka's obligation to provide any social security records to the plan administrator, he did not do so. So the only evidence that's in the record regarding social security is that he was approved for social security disability in the year 2000. And there is no dispute that the plan administrator agreed that in 2000, Mr. Kludka was disabled. So the fact that six years before the denial, the plan administrator and social security both were finding him to be disabled, the district court did not find that significant. And that's another piece of extrinsic evidence that could have been offered during litigation and probably would have been admissible under a body to supplement a deficient record, and there's been no attempt to do that. If there are no other questions, Your Honors, I don't believe there are. Thank you. Thank you very much. Davis, we used a lot of your time with questions, so we'll add a minute to your time here. Thank you, Your Honor. Regarding Ms. Dewalt's reference to page 370 on the denial, I don't believe that that cures the defect because it doesn't explain to, it doesn't even set out what the plan's definition of objective medical findings was. There is a definition, as I pointed out in my brief. What are objective findings? I don't know that I really know the answer to that. I don't know that anyone in the court knows the answer to that. So how did that help Mr. Kludka understand what it was that he needed to submit to perfect his claim? With regard to, and I don't believe the court has ever held that that type of sparse reference that doesn't give any direction at all is sufficient to meet their duty under this court's cases. As it relates to submitting evidence after the administrative denial, I don't believe a baby contemplates that. That would be more merits evidence as opposed to conflict of interest evidence. I don't believe that that would be permitted because otherwise you would have an administrative review that went on forever even in the litigation. So I think there's, the other issue is is that they didn't tack on a new reason for denying a claim that could be responded to. That's the reason why no evidence was submitted following the final denial. As it relates to the social security decision, that is probably a lesser issue, but I think it goes to the nature and the quality of the review that Mr. Kludka was provided. Although they knew he was getting social security, they told him to file for social security. In the process of looking at the record, they never asked him anything about his social security claim or whether or not there was anything in the social security claim that potentially could have cured the defect. Thank you, counsel. Thank you, Your Honor. The case just argued is submitted and we thank both of you for very helpful arguments.
judges: SCHROEDER, GRABER, BYBEE